**Affirmed and Opinion filed March 26, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-01063-CR

## EX PARTE SILVIO BOSCO LUNA

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Cause No. 847994-A**

## O P I N I O N

Appellant, Silvio Bosco Luna, appeals from the trial court's order denying his application for writ of habeas corpus. He contends that his trial counsel failed to advise him of the immigration consequences of his guilty plea to an underlying theft offense and that, but for this ineffective assistance, he would have foregone the plea agreement and chosen instead to proceed to trial. Following the recent decision in *Chaidez v. United States*, 133 S. Ct. 1103 (2013), we hold that the rule of *Padilla v. Kentucky*, 559 U.S. 356 (2010), does not apply retroactively to cases like this one, which became final on direct review prior to *Padilla*'s holding. Moreover, even if Luna could show that his counsel's performance was constitutionally deficient under pre-*Padilla* law, we conclude the evidence

supports the trial court's finding that Luna suffered no prejudice from his trial counsel's alleged deficiency. We therefore affirm the trial court's order denying Luna's application.

## BACKGROUND

Luna, a citizen of Nicaragua, was granted permanent United States residency in March 2000. In June 2000, Luna was an employee at Macy's Department Store. Along with a fellow employee (later charged as a co-defendant), Luna engaged in a scheme to use his debit card to conduct fraudulent transactions at the store register that ultimately permitted the pair to pocket cash. A Macy's loss prevention officer witnessed Luna and his co-defendant commit the theft, and Luna was arrested the same day. In August 2000, Luna pled guilty to the offense of theft, a state jail felony. He was sentenced in accordance with a plea bargain and ordered to pay $7,396 in restitution, an $800 fine, $247.25 in court costs, and to complete 250 hours of community service and a term of five years' community supervision. Luna did not file a direct appeal. Luna satisfied the terms of his community supervision in 2005.

In 2010, Luna discussed his status with an immigration attorney in connection with his pending residency renewal. Luna alleges the immigration attorney advised him that, due to his prior felony conviction, no progress could be made with his renewal, and that the conviction would result in his immediate removal from the United States upon such application. At the writ hearing, Luna testified that his residency card expired in 2011; his current immigration status does not appear in the record.

In 2011, Luna filed an application for writ of habeas corpus, contending that his trial counsel in the theft case failed to advise him accurately regarding the adverse immigration consequences that would result from his decision to enter a

2

guilty plea, thereby rendering his plea involuntary under *Padilla v. Kentucky*, 559 U.S. 356. In the sworn application, Luna asserted he would not have accepted the guilty plea if he had known the plea would subject him to presumptively mandatory removal from the United States. According to Luna, he would have opted for a trial and risked jail time as an alternative to deportation.

A hearing took place on Luna's application on October 21, 2011. In addition to his own testimony, Luna called three witnesses to testify live at the hearing: attorney Ojay Grace; Luna's mother, Teotista Chamorro; and his trial attorney in the theft case, Juan Contreras.

Ojay Grace is an attorney who has taught immigration law as an adjunct professor and who practices immigration and family law. The trial court accepted Grace as an expert witness. Grace testified that in 2000, when Luna agreed to enter a guilty plea in the theft case, the plea would result in Luna's mandatory removal from the United States pursuant to immigration law. Grace explained that, by 2000, immigration laws had been changed and the changes had a dramatic impact on lawful permanent residents such as Luna. According to Grace, lawful permanent residents would now be more seriously affected by any type of criminal conviction, and they had fewer remedies available to them in immigration court to avoid those consequences. He further testified that, for immigration purposes, Luna's guilty plea to felony theft is considered an aggravated felony subject to deportation. Grace was questioned extensively by Luna's counsel and the trial court regarding his interpretation of the *Padilla* holding. He opined that a defense lawyer should understand that conviction of an aggravated felony subjects a client to presumptively mandatory deportation and must advise the client that he will face those proceedings as an additional punishment.

Luna's mother, Teotista Chamorro, testified that she joined Luna and his

3

attorney, Contreras, at Contreras's office for a meeting prior to the plea agreement. She recalled Luna informed Contreras that he was not a citizen, but did not recall any discussion of his immigration status.

Contreras testified that he reviewed Luna's file prior to testifying at the writ hearing, but he did not recall specific discussions or occurrences due to the age of the case. He stated that he normally advises his non-citizen clients that they may be removed from the United States following a conviction, and further that

> if [they] somehow get deportation relief, if [they] are not removed from the country, and in the future [they] have problems again, [they] are still going to be looking at this case. . . . [It] is still going to come up. . . . And it will always be available for immigration to consider in deportation proceedings.

He further stated that, because the effect of deportation is serious, his normal practice is to recommend that a non-citizen facing criminal charges consult an immigration attorney regarding immigration-specific concerns. While unable to recall specific details of his conversations with Luna, Contreras was confident he advised Luna with these standard immigration warnings in connection with his plea agreement.

Luna testified that Contreras inquired as to his immigration status at their initial meeting, and Luna informed Contreras he was a permanent resident. According to Luna, Contreras neither advised he speak with an immigration attorney nor discussed his immigration status beyond that first meeting. Luna also testified to his concern about going to jail: "Back in that time I was so scared of going to jail. It was my first time, you know, getting into trouble. I had never done anything like that. And my concern was going into jail and not seeing my family. I was so scared." He further testified that had he known his plea agreement—for community supervision in lieu of jail—would result in

4

deportation, he would not have agreed to its terms. Regarding the plea agreement, which contains an immigration admonishment directed at non-citizens, Luna testified Contreras did not explain its terms to him. He stated he signed the document, despite not understanding its meaning, because he "was scared of . . . going into jail" and because Contreras told him "it was better for [him] to take the five-year probation instead of two years in jail; that [he] had a very hard case; that [the State] had some good evidence." Luna testified that deportation was of primary concern, and he would have sought other options had he understood the gravity of his plea decision.

At the conclusion of the hearing, the trial court denied Luna's application and Luna appealed. This court abated Luna's appeal and remanded the case for the trial court to make written findings of fact and conclusions of law. The trial court complied, and we reinstated the appeal.

The trial court found that Contreras advised Luna his plea carried a risk of deportation. In addition to making findings regarding the facts of the underlying theft offense, the trial court found the testimony of "Juan Contreras . . . credible" and his opinion "that [Luna] would have been found guilty by a jury had he gone to trial . . . credible." The trial court also found that "[Luna's] testimony that [Contreras] failed to discuss immigration consequences with [him] is not credible," "[Luna's] testimony that he would have gone to trial but for the advice of Contreras is not credible," and Luna's "testimony that he was concerned about going to jail is credible."

## ANALYSIS

In a single issue on appeal, Luna contends the trial court abused its discretion when it denied his application for writ of habeas corpus because Contreras failed to advise him that he would be deported, as a certainty, if he

agreed to a guilty plea in the theft case.

## I. Standard of review and applicable law

In reviewing the trial court's decision to grant or deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We will uphold the trial court's ruling absent an abuse of discretion. *Id.* The trial judge is the original fact finder in habeas corpus proceedings. *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010). In conducting our review, we afford almost total deference to the trial judge's determination of the historical facts that are supported by the record, especially when the factual findings are based on an evaluation of credibility and demeanor. *Peterson*, 117 S.W.3d at 819. We afford the same amount of deference to the trial judge's application of law to the facts if the resolution of the ultimate questions turn on an evaluation of credibility and demeanor. *Id.* If resolution of the ultimate questions turns on application of legal standards, we review the determination de novo. *Id.*

Luna based his habeas corpus application on a denial of the effective assistance of counsel and due process / due course of law guaranteed by the United States and Texas Constitutions, which he argued rendered his plea involuntary. The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the criminal defendant. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The *Strickland* two-pronged test for ineffective assistance of counsel applies in the guilty plea context. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (citing *Strickland v.*

6

*Washington*, 466 U.S. 668, 687 (1984)).[1]  To establish ineffective assistance of counsel, a criminal defendant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687; *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).  Failure to show either deficient performance or sufficient prejudice defeats the claim of ineffectiveness.  *Strickland*, 466 U.S. at 697.

In order to satisfy the second (prejudice) prong of the *Strickland* test in the guilty plea context, a criminal defendant or habeas corpus applicant must show there is a reasonable probability that, but for his trial counsel's errors, he would not have pled guilty and would have insisted on going to trial.  *Hill*, 474 U.S. at 59; *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997).  When determining whether Luna would have refused to plead guilty but for the allegedly deficient advice of his trial counsel, we consider the circumstances surrounding the plea and the gravity of the misrepresentation material to that determination.  *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).

## II.  The trial court did not abuse its discretion in denying Luna's habeas application.

### A.  *Padilla* does not apply retroactively.

In his brief, Luna presumes the 2010 decision in *Padilla* applies retroactively to the advice he received in connection with his 2000 guilty plea.  In response, the State argues *Padilla* should not be applied retroactively, and urges us to reconsider our decision in *Aguilar v. State*.  In *Aguilar*, we joined the Texas First

---

[1] *See also Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (applying *Strickland* standard to claims of ineffective assistance under the Texas Constitution).

and Eighth Courts of Appeals in retroactively applying *Padilla* to collateral proceedings such as this habeas corpus application. *Aguilar v. State*, 375 S.W.3d 518, 522–24 (Tex. App.—Houston [14th Dist.] 2012, pet. filed); *see also Ex parte De Los Reyes*, 350 S.W.3d 723, 728–29 (Tex. App.—El Paso 2011, pet. granted); *Ex parte Tanklevskaya*, 361 S.W.3d 86, 93–95 (Tex. App.—Houston [1st Dist.] 2011, pet. filed).

Following the submission of this appeal, the Supreme Court of the United States ruled on the question of *Padilla*'s retroactive application. *See Chaidez*, 133 S. Ct. 1103. It held that *Padilla* does not apply retroactively to cases on collateral review, in which a defendant's conviction became final prior to *Padilla*'s holding. *Id.* at 1113. In deciding a federal constitutional issue, we are bound by U.S. Supreme Court decisions. *See* U.S. CONST. art. VI, cl. 2. Further, "where one of our decisions on a federal constitutional issue directly conflicts with a United States Supreme Court holding, we are bound to overrule our decision." *State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998). Moreover, the Court of Criminal Appeals recently decided that *Padilla*'s rule does not apply retroactively under the Texas Constitution. *See Ex parte De Los Reyes*, No. PD-1457-11, 2013 WL 1136517 (Tex. Crim. App. Mar. 20, 2013). Accordingly, we recognize the abrogation of the rule this Court adopted in *Aguilar*, and we hold that *Padilla* does not apply retroactively to Luna's representation in the underlying theft case.

Because Luna's theft conviction became final before *Padilla* was decided, pre-*Padilla* law applies to his habeas application alleging ineffective assistance of counsel. Under that law, "while the Sixth Amendment assures an accused of effective assistance of counsel in criminal prosecutions, [it] does not extend to 'collateral' aspects of the prosecution." *Ex parte Morrow*, 952 S.W.2d at 536. Immigration consequences of a guilty plea are considered collateral; therefore,

Luna's plea would not be rendered involuntary under the United States or Texas Constitutions even if his attorney was deficient in informing him of the consequences. *See State v. Jimenez*, 987 S.W.2d 886, 888–89 (Tex. Crim. App. 1999). Because Luna had no constitutional right to effective assistance of counsel in warning about the collateral immigration consequences of his guilty plea, the trial court did not abuse its discretion in denying Luna's habeas application.

### B.     Luna did not prove prejudice.

Even if Luna could make a case under pre-*Padilla* law that his counsel's performance was constitutionally deficient, we conclude, based upon our review of the trial court's findings and the record, that Luna failed to prove the second prong of his ineffective assistance claim. *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). This prong required Luna to show a reasonable probability that, but for his trial counsel's erroneous immigration advice, he would have rejected the plea bargain and insisted on going to trial. *Hill*, 474 U.S. at 59; *Ex parte Morrow*, 952 S.W.2d at 536.

Here, two pieces of evidence support Luna's contention that he would have rejected the plea agreement. First, his sworn statement in his application for writ of habeas corpus states he "would not have pled guilty had he known he would not be able to become a United States citizen" and "would be deported as a result of the plea." Second, his live testimony at the habeas hearing was to the same effect. The trial court found those statements not credible. On appeal, we must defer to this finding if it is supported by the record. *Peterson*, 117 S.W.3d at 819. We conclude that it is.

From a legal perspective, Luna was subject to automatic removal regardless

of whether he pled guilty to the theft charge or decided to go to trial and was ultimately found guilty by a jury. Removal would have been required even if he received probation, instead of incarceration, as a consequence of a guilty verdict. 8 U.S.C. § 1101(a)(48) (2006) (defining a "conviction" as having occurred for purposes of federal immigration law when a formal judgment of guilt of the alien has been entered by a court); *see United States v. Ramirez*, 367 F.3d 274, 277 (5th Cir. 2004) ("The term 'conviction' is now defined as a formal judgment of guilt entered by the court or, if an adjudication of guilt has been withheld, where the judge has imposed some form of punishment, penalty, or restraint on the alien's liberty.").

In addition, the trial court made findings of fact, supported by the record, that Luna would not have gone to trial even if he had received different immigration advice. The trial judge found credible Contreras's opinion that Luna would have been found guilty by a jury had he gone to trial. Evidence in the underlying case of felony theft against Luna was strong. At the habeas hearing, Luna testified he wrote a letter to Macy's wherein he described his actions and took responsibility for them. The trial judge found not credible Luna's assertion that he may have succeeded in suppressing that letter, and on appeal Luna points to nothing in the record that undermines this finding. Further, Luna's co-defendant provided statements supporting Luna's guilt, and a Macy's employee witnessed him commit the crime.

Luna's testimony at the hearing also supports the trial judge's finding that Luna would not have gone to trial but for his trial counsel's allegedly deficient actions. While testifying, on the one hand, that deportation would have been "a main concern," Luna contradicted that testimony in the following exchange:

Q: And had he told you, Mr. Luna, you could go to jail for five or six

10

months, but you will not be deported, would you have considered that?

A: No, I would still not consider that.

Q: Well, if deportation was a main concern of yours?

A: Deportation was a main concern, but I would have probably had looked for more options there, because I didn't get that to him. He didn't explain that to me.

This testimony that Luna would not consider jail is consistent with other testimony that Luna was concerned about going to jail (quoted in the background section above). Taken together, this evidence supports the trial judge's finding that Luna's concern about going to jail was credible, while his assertion that he would have gone to trial but for Contreras's advice was not credible. The trial judge was entitled to credit or discredit Luna's conflicting testimony based on his evaluation of Luna's credibility and demeanor, and we must defer to his finding where we find support for it in the record, as we do here. *See Peterson*, 117 S.W.3d at 819.

For these reasons, we conclude the record supports the trial court's finding that Luna was not credible when he stated that he would have rejected the plea bargain and elected to go to trial if he had received correct immigration advice. The record also supports the court's contrary finding that Luna would not have gone to trial even had he received correct advice. Therefore, we hold Luna was not prejudiced as a result of any deficient conduct by trial counsel in the underlying theft case, and we overrule his sole issue.

**CONCLUSION**

Having overruled Luna's issue on appeal, we affirm the trial court's denial of his application for writ of habeas corpus.


/s/    J. Brett Busby
       Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby.

Publish — Tex. R. App. P. 47.2(b).