**Affirmed and Memorandum Opinion filed December 23, 2014.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-14-00183-CR

_____

## EX PARTE EDWIN MAURICIO GUEVARA

_____

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1333185-A**

_____

## M E M O R A N D U M   O P I N I O N

Applicant Edwin Mauricio Guevara appeals the denial of his post-conviction application for writ of habeas corpus, arguing that he was denied effective assistance of counsel on the grounds that his trial counsel failed to adequately advise him of the immigration consequences of his guilty plea. We affirm.

### BACKGROUND

Applicant, a native of El Salvador, was legally admitted into the United States in 1998 and received Temporary Protected Status (TPS). On February 29, 2012, applicant was charged with the state jail felony offense of possession of a

controlled substance, namely cocaine, in an amount weighing less than one gram. *See* Tex. Health & Safety Code § 481.115(a). Applicant pleaded guilty pursuant to an agreement with the State and the trial court deferred adjudication of his guilt, placed him on community supervision for two years, and assessed a $200.00 fine.

One year later, immigration authorities arrested applicant and put him into removal proceedings in immigration court on the ground that his felony conviction rendered him deportable from the United States. *See* 8 U.S.C. § 1227(a)(2)(B)(i). Shortly after, the U.S. Citizenship and Immigration Services informed applicant that it was withdrawing its approval of his TPS. Due to the arrest, applicant could not comply with the conditions of his community supervision. On July 16, 2013, the State filed a motion to adjudicate guilt to revoke applicant's community supervision. On July 2, 2014, the trial court granted the State's motion and sentenced applicant to six months' confinement and assessed a $200.00 fine.

Prior to the trial court's ruling, applicant filed an application for writ of habeas corpus, alleging that his trial counsel did not adequately advise him about the immigration consequences of his guilty plea and thus rendered ineffective assistance of counsel under *Padilla v. Kentucky*, 559 U.S. 356 (2010). Applicant attached his affidavit, claiming that he would have never pleaded guilty had he known he would be deported or that he would be unable to renew his TPS.

The State provided the affidavit of applicant's trial counsel, Kimberly J. Samman. Samman stated the following: when applicant told her he was a non-citizen, she informed him that his immigration status may be affected and he may be deported; she repeatedly advised applicant to meet with an immigration attorney but he never did; she met with an immigration attorney and relayed to applicant the immigration attorney's opinion that a guilty plea would affect applicant's TPS and put him into deportation proceedings; and she admonished him again of the

2

immigration consequences when applicant pleaded guilty. The State also provided the affidavit of Samman's assistant and translator, Nancy V. Cortez, who corroborated Samman's statements.

The trial court conducted a hearing based on the affidavits and denied the application for writ of habeas corpus on February 6, 2014. The trial court issued extensive findings of fact and conclusions of law and stated that it found Samman's and Cortez's affidavits to be credible and that applicant's affidavit was not credible. Applicant timely filed this appeal.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's determination on an application for writ of habeas corpus for abuse of discretion. *Ex parte Fassi*, 388 S.W.3d 881, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.). An applicant seeking post-conviction habeas corpus relief bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). The trial court is the sole finder of fact in a habeas proceeding. *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010). In reviewing the trial court's decision to grant or deny relief, we view the facts in the light most favorable to the trial court's ruling. *Fassi*, 388 S.W.3d at 886. We afford almost total deference to the trial court's findings, especially when the factual findings are based on an evaluation of credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). We will uphold the trial court's judgment as long as it is correct on any theory of law applicable to the case. *Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001) (per curiam).

The test for determining the validity of a guilty plea is whether it represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A guilty plea is

not knowing or voluntary if it is made as a result of ineffective assistance of counsel. *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012). The two-pronged *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To be entitled to habeas relief, the applicant must show by a preponderance of the evidence that (1) the trial counsel's performance fell below the objective standard of reasonableness, and (2) there is a reasonable probability that, but for the trial counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687−88, 694 (1984).

Under *Padilla*, trial counsel's performance is deficient if the trial counsel fails to advise a non-citizen client about deportation consequences that are "truly clear." 559 U.S. at 369. Therefore, trial counsel performs deficiently if he "merely mentions the possibility of deportation when the relevant immigration provisions are presumptively mandatory." *Fassi*, 388 S.W.3d at 886. However, under *Padilla*, when the prejudice prong of the *Strickland* test is dispositive, we need only address that prong on appeal. *Ex parte Murillo*, 389 S.W.3d 922, 927 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also My Thi Tieu v. State*, 299 S.W.3d 216, 225 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("[I]t is not necessary to determine whether trial counsel's representation was deficient if appellant cannot satisfy the second *Strickland* prong."). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

## ANALYSIS OF APPELLANT'S ISSUE

In his sole error on appeal, applicant contends that the trial court erred in denying him relief because his trial counsel rendered ineffective assistance of

counsel by failing to advise him that (1) by pleading guilty, his TPS would be withdrawn, (2) deportation was a virtual certainty or presumptively mandatory as required by *Padilla*, and (3) he would be arrested by immigration authorities and be unable to comply with the conditions of his community supervision.

Under the prejudice prong of *Strickland*, the applicant must show that there is a reasonable probability that, but for his trial counsel's errors, he would have not pleaded guilty and would have insisted on proceeding to trial. *Hill*, 474 U.S. at 59. We make this inquiry on a "case-by-case basis, considering the circumstances surrounding the plea and the gravity of the alleged failure." *Fassi*, 388 S.W.3d at 887−88. The applicant must show that a decision to reject the plea agreement would have been rational under the circumstances. *Padilla*, 559 U.S. at 372. In *Murillo*, this Court applied a four-factor test to determine prejudice under *Strickland*. 389 S.W.3d at 928−30. Thus, to determine whether the applicant's rejection of the plea would have been rational under the circumstances, this Court looks at the following four factors: (1) whether there is evidence of the applicant's guilt; (2) whether the applicant had any factual or legal defenses; (3) whether immigration status was his primary concern; and (4) how the plea deal compared to the penalties risked at trial. *Id.*

Applicant argues that if he had known he was going to be arrested by immigration authorities while on community supervision, he would have insisted on going to trial and this decision would have been rational under the circumstances. Applicant further contends that he would have rejected the plea deal if he had known he faced presumptively mandatory deportation and that he would be unable to renew his TPS.

One key circumstance courts consider when determining whether a decision to reject a plea deal would have been a rational one is the strength of the State's

5

case or evidence of the applicant's guilt. *Id.* at 928. As the trial court recognized, "the record does not contain much evidence describing the State's evidence against Applicant." Thus, the trial court considered this factor along with whether applicant had any factual or legal defenses to the possession charge. Here, applicant presented no evidence that he had any factual or legal defenses to the possession charge. *See id.* at 929 (finding applicant presented no affirmative evidence that he had any factual or legal defenses to the charge or that he believed he was not guilty of the charge); *Fassi*, 388 S.W.3d at 889 (finding no prejudice when appellant presented no affirmative evidence that he had any factual or legal defenses to the charge). Applicant also never maintained his innocence or alleged that he was not guilty of possession of cocaine. In fact, applicant's plea acknowledges that he "unlawfully, intentionally and knowingly" possessed cocaine.

The only potential defense applicant referred to was in his affidavit in which he claimed that had he known he would be deported, he would have never pleaded guilty to something "that was not [his]." However, the trial court found that applicant's affidavit was not credible and we must defer to that determination if it is supported by the record. *See Fassi*, 388 S.W.3d at 888. Further, the State does not have to prove the applicant owned the drugs. Instead, the State need only show applicant "exercised control, management, or care over the substance . . . and the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).

Applicant also alleges a series of defenses for the first time on appeal, arguing that a warrantless search of his vehicle occurred and that there was no proof applicant knew the cocaine was in his vehicle. However, there is no evidence in the record of applicant having ever raised these defenses or having brought them

6

to the attention to the trial court. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."). The trial court also considered the fact that "Samman's affidavit conveys that Applicant had no viable factual or legal defenses to the charged offense." Samman stated in her affidavit that she explained to applicant that a dismissal was highly unlikely. When Samman discussed applicant's claimed defenses with the prosecutor, the prosecutor agreed to further investigate the case. The prosecutor called the arresting officer, but the officer could not substantiate any of applicant's claimed defenses. The record supports the trial court's finding that applicant "faced a high risk of being convicted of the charged crime if he had insisted on trial." Accordingly, this factor weighs against a finding of prejudice.

The court can also consider whether applicant presented evidence indicating that the immigration consequences of his plea were his paramount concern. *Murillo*, 389 S.W.3d at 929. The trial court found that applicant's primary concern was avoiding incarceration, rather than the adverse immigration consequences of his plea. Samman's affidavit stated that after she warned applicant that he may be deported, she repeatedly told applicant to consult an immigration attorney but applicant never did. Samman affirmatively sought out advice from an immigration attorney and explained to applicant the immigration attorney's opinion that a guilty plea would affect applicant's TPS and put him into deportation proceedings. Samman's assistant provided applicant with the name and number of the immigration attorney, but applicant never contacted him. Applicant's failure to seek advice from an immigration attorney suggests that the immigration consequences of his plea were not his primary concern.

Furthermore, at the plea proceeding, applicant did not express any concern

7

about possible deportation despite both his trial counsel's and the trial court's admonishments concerning immigration. *See id.* at 930 ("An applicant's failure to express concerns about immigration consequences after receiving repeated warnings also may be a prejudice factor to consider."); *Fassi*, 388 S.W.3d at 889 (citing *Ex parte Moreno*, 382 S.W.3d 523, 529 (Tex. App.—Fort Worth 2012, pet. ref'd) (finding immigration consequences were not applicant's primary concern when pleading guilty "based upon appellant's apparent total inaction upon receiving repeated verbal and written warnings about the possibility of his deportation"). Instead, the trial court noted that applicant informed Samman that he did not want to go to trial and just wanted to get his case over with. Thus, the record supports the trial court's finding that adverse immigration consequences were not applicant's primary concern.

Another circumstance courts can consider when analyzing prejudice is how the plea deal compared to what penalties the applicant risked by going to trial. *Murillo*, 389 S.W.3d at 930. In making this determination, the court can consider whether the applicant presented evidence that any other plea deal would have helped him avoid negative immigration consequences. *Id.*; *see also Moreno*, 382 S.W.3d at 529 (finding that there was no prejudice because applicant presented no evidence that the State would have offered a different plea deal that did not have the same immigration consequences). The court can also look at whether the applicant has presented any evidence that he would have received probation if convicted at trial. *Murillo*, 389 S.W.3d at 930.

Here, the State offered applicant plea options of 60 days in the Harris County Jail or a two-year deferred adjudication period. If convicted at trial, the punishment range was confinement in state jail for 180 days to two years, along with a potential fine of up to $10,000.00. *See* Tex. Penal Code § 12.35(a), (b).

Applicant pleaded guilty and received deferred adjudication for two years. However, due to his arrest by immigration authorities, he was unable to comply with the conditions of his community supervision and his deferred adjudication was revoked. Thus, applicant was ultimately sentenced to 180 days in jail. Applicant was subject to deportation under either scenario, regardless of whether he pleaded guilty or decided to go to trial and was found guilty. *See Ex parte Luna*, 401 S.W.3d 329, 335 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("[Applicant] was subject to automatic removal regardless of whether he pled guilty to the theft charge or decided to go to trial and was ultimately found guilty by a jury."); *see also* 8 U.S.C. § 1101(a)(48) (defining "conviction" as having occurred for purposes of federal immigration law when a formal judgment of guilt of the alien has been entered by a court). Thus, applicant faced the same adverse immigration consequences from pleading guilty as he would if he was found guilty at trial.

Further, because the record supports the trial court's finding that applicant faced a high risk of conviction at trial, it is unlikely applicant would have been acquitted at trial. *See Murillo*, 389 S.W.3d at 931 ("On this record, where there was strong evidence of guilt and no evidence of any factual or legal defenses to the crime, the odds of acquittal, and thus avoiding deportation, appear to have been quite slim."). Therefore, the record supports the trial court's finding that "Applicant received a good deal to resolve his criminal case by accepting the State's plea bargain offer." Applicant also failed to present evidence that the State was willing to offer a different plea deal with more favorable immigration consequences.

The only evidence applicant presents to suggest that it would have been rational to reject the plea deal is his own statement that he would have never

9

pleaded guilty had he known he would be deported and unable to renew his TPS. However, the trial court found that applicant's affidavit was not credible and we must defer to that determination if it is supported by the record. *See Fassi*, 388 S.W.3d at 888 ("[T]he habeas court was free to disbelieve appellant's self-serving testimony that he would not have pled guilty if he had been aware of the immigration consequences of his plea."); *Ex parte Ali*, 368 S.W.3d 827, 840−41 (Tex. App.—Austin 2012, pet ref'd) ("The only evidence that [applicant] presented which tended to show that he would have insisted on going to trial are statements in his affidavit to that effect. However, the trial court would not have abused its discretion in disbelieving these statements."). The record and circumstances surrounding applicant's plea show that a rational person would not have rejected the plea deal and insisted on trial. Therefore, when viewing the trial court's factual findings and applying the above factors, we hold that applicant failed to prove prejudice.

## CONCLUSION

Accordingly, we affirm the trial court's judgment denying relief.

/s/     Ken Wise
        Justice

Panel consists of Justices McCally, Donovan, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).

10