**Affirmed and Memorandum Opinion filed August 30, 2016.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-15-00689-CR

**JOSE PABLO HERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 73970**

## M E M O R A N D U M   O P I N I O N

Appellant Jose Pablo Hernandez pleaded guilty without a sentencing recommendation to possession of at least four but fewer than 200 grams of a controlled substance with intent to deliver, a first-degree felony. After a presentence investigation (PSI) report was prepared, the trial court sentenced appellant to 18 years' imprisonment. Appellant contends his guilty plea was not knowing and voluntary because he received ineffective assistance of counsel. Because appellant has not established his counsel's performance was deficient, we affirm.

BACKGROUND

## A. Events before guilty plea

In May 2014, officers from the Brazoria County Special Response Team executed a warrant to search a house in Alvin, Texas. Appellant was in the house. The officers detained him and found 27.6 grams of cocaine in the pocket of his shorts. While searching the house and surrounding property, the officers discovered 19.2 more grams of cocaine, materials used to package and distribute large quantities of drugs, money, a shrine dedicated to La Santa Muerte, pictures of the Virgen de Guadalupe, and a picture of Jesus Malverde. According to the investigator's report, La Santa Muerte and the Virgen de Guadalupe are known to be patron saints used by drug traffickers, and Jesus Malverde is celebrated as a folk saint by drug traffickers. Appellant was arrested and jailed.

Appellant's family hired Thomas Hayes to represent him. Hayes has practiced law for more than 30 years. He has experience in criminal and immigration law. At the hearing on appellant's motion for new trial, Hayes testified that he talked with appellant at the Brazoria County jail when he was hired and again in November 2014. He and appellant also discussed the case in or near the courtroom during each of several court appearances.

In addition to meeting with appellant and appellant's family, Hayes attended hearings, conducted research, and reviewed the State's discovery materials. He did not file a discovery motion to see those materials; he said a motion was unnecessary because the Brazoria County District Attorney's office "policy is to have open files for attorneys." Hayes said he obtained all the information he wanted from the State's file, including the offense reports.

Appellant and Hayes describe their November 2014 meeting differently. According to appellant:

Mr. Hayes briefly interviewed me. We did not discuss the allegations against me. We did not review the offense report or search warrant. He did not explain the evidence that the State said they had against me. . . . Mr. Hayes never told me the punishment range on my case. I did not know that I was facing 5 years to life in prison and a $10,000.00 fine, if I were convicted.

Hayes, by contrast, said:

I discussed the events of the search and seizure. I discussed the level of crime that they had charged him with, which was a first-degree felony because of the amount of the drugs found in his home. I also discussed with him the detrimental effects of the Santa Muerte shrine that he had built in the – in his home, and what I was . . . trying to do to . . . educate the District Attorney's Office on . . . his Hispanic culture and . . . what the shrine really was. Because it's – it's a skeleton, and it looks pretty shocking to the average person. . . . [I discussed] how his case would look to a jury. . . . I gave him the risks involved, which were, for first-degree felony, life, 5 to 99 or life. . . . I explained to him what the evidence was, which was the amount . . . [of] cocaine they found in his house and how the whole thing would, you know, would look to a jury of – of Americans in this area . . . .

Though appellant has not been diagnosed with any mental disorder or condition, there was testimony that appellant has difficulty in comprehension. Hayes "tried to act accordingly as cautiously as I could and explain things as well as I could; but that's — that's about it. I didn't take it any further than that." Appellant sometimes asked Hayes to repeat an explanation, which he did. By the end of each of their meetings, Hayes believed appellant understood him.

### B. Plea and sentencing

Appellant decided to plead guilty. Hayes met personally with Brazoria County District Attorney Jeri Yenne (not an assistant district attorney) to attempt to negotiate a better plea bargain for appellant. The State first offered 25 years in prison, then 12 years. Appellant rejected both offers.

3

On January 20, 2015, appellant pleaded guilty without a sentencing recommendation. The trial court, through a visiting judge, accepted the plea and said a sentencing hearing would be held once the PSI was prepared. The State offered into evidence the probable cause affidavit and a crime lab drug analysis sheet "with the stipulation that if witnesses were called to testify today they will testify to facts substantially similar to those outlined in" the affidavit and analysis. Hayes said he had no objection. The trial court admitted both documents.

The PSI was filed on May 7, 2015. Several letters were attached:

- A letter from the prosecutor asking the trial court to sentence appellant to 50 years' imprisonment.

- Two letters from Brazoria County Sheriff's Department Lieutenant Mary Anguiano and Deputy Enrique Rosas regarding, as the PSI characterized it, appellant's "positive work ethic" and "how he has been respectful and compliant since he has been incarcerated."

- Six letters (four in English and two in Spanish) from appellant's friends and family on his behalf.[1]

The PSI writer said he requested a letter from Hayes on April 23, 2015, but no letter was received by the time the PSI was filed.

The trial court held a sentencing hearing on May 21, 2015. Appellant was the only witness. Neither party offered other evidence at the hearing. Before testimony began, the presiding judge announced he had read the PSI, then questioned appellant and Hayes:

THE COURT:     Prior to [appellant's] pleading guilty, did you

---

[1] Hayes said he compiled multiple letters on appellant's behalf and submitted them for inclusion in the presentence investigation report. The PSI states the letters from appellant's friends and family were received from Stephanie Hernandez, appellant's sister-in-law.

4

|  |  |
|---|---|
|  | advise him of his immigration consequences of his plea? |
| HAYES: | Yes, I did. In fact, he hired me for that specific purpose, along with his criminal defense. |
| THE COURT: | Okay. And, Mr. Hernandez – |
| APPELLANT: | Yes, sir. |
| THE COURT: | – did Mr. Hayes advise you of the immigration consequences of – |
| APPELLANT: | Yes. |
| THE COURT: | – your guilty plea prior to you pleading guilty? |
| APPELLANT: | Yes, sir. |
| THE COURT: | And regardless of whatever those circumstances were or possibly going to be as it relates to your plea of guilty, do you still want to plead guilty and go to the Court for punishment?' |
| APPELLANT: | Yes, sir. |
| THE COURT: | Okay. Were you advised by [the visiting judge] that if you're not a citizen of the United States, a plea of guilty could result in your deportation, the exclusion from admission to this country, or the denial of naturalization under federal law? Did she advise you of that? |
| APPELLANT: | Yes, sir. |
| THE COURT: | And did you understand that before you pled guilty? |
| APPELLANT: | I understand, sir. |

Appellant then took the stand. He testified his mother, who had recently died, had been ill, and her medication was expensive. He said he was dealing drugs

5

to get money to pay for the medication. The State cross-examined appellant on several subjects, including the shrine to La Santa Muerte in his house, his criminal history, and his drug use.

Hayes followed up on those topics on redirect examination. Through his questions, he elicited testimony from appellant that:

- La Santa Muerte is part of the Catholic culture and is connected to the Day of the Dead holiday.

- Appellant was 13 or 14 years old when he committed some of the crimes the State mentioned (breaking and entering into a school).

- The marijuana found in appellant's house was for his personal use; he did not sell it to others.

Hayes also questioned appellant about probation:

HAYES:          Are you asking this court to consider you for probation?

APPELLANT:    Yes, sir.

HAYES:          . . . . What would you say to convince this judge that you would do right and that you would abide by the rules and –

APPELLANT:    Well, really, you know, even though I'm not from here, I really wanted to go to the Army which I know it ain't going to – that I could choose from. That's what really I wanted to do but – and that I want to – I want to – I want to be able to get a job regularly like other regular people. I've been living here for a while. I know I messed up a little bit a couple of times. But it just that sometimes somebody don't think straight. They think after.

HAYES:          When you – and you acknowledge that you know

6

that you did something wrong?

APPELLANT: Yes.

HAYES: And that you're going to have to pay a price for that?

APPELLANT: Yes, sir. I do.

Following closing arguments by the prosecutor and Hayes, the trial court sentenced appellant to 18 years' imprisonment. Appellant said, "I think that this is a inclusion [sic] of my rights of sentencing since this is my first time involved in it. I would understand if I had priors but that's the only thing that got me confused. The sentencing is so cruel." The trial court signed the judgment of conviction that day.

## C.    Motion for new trial

Appellant retained new counsel, who timely filed a motion for new trial. The motion alleged appellant's guilty plea was not made knowingly, intelligently, and voluntarily due to two instances of ineffective assistance of counsel by Hayes:

1. Hayes failed to adequately advise appellant of the evidence against him and the applicable law. Appellant did not understand the evidence or the consequences of accepting or rejecting a plea bargain offer.

2. Hayes failed to advise appellant of the specific immigration consequences of his being convicted of an aggravated felony. If Hayes had properly advised him, he would have elected to proceed to trial.

Appellant supported the motion for new trial with his affidavit describing the events preceding his guilty plea.

The trial court heard the motion for new trial. Hayes, appellant, and Stephanie Hernandez, appellant's sister-in-law, testified. Appellant did not offer

7

other evidence. The State did not present witnesses or offer evidence. The trial court denied the motion, and appellant timely appealed.[2]

ANALYSIS

## I.     Legal standards

A guilty plea is valid only if it represents a voluntary and intelligent choice among the courses of action open to the defendant. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A guilty plea resulting from ineffective assistance of counsel is not knowing and voluntary. *Ex parte Niswanger*, 335 S.W.3d 611, 614–15 (Tex. Crim. App. 2011), *abrogated in part on other grounds by Cornwell v. State*, 471 S.W.3d 458 (Tex. Crim. App. 2015).

To establish he received ineffective assistance of counsel, a defendant must prove (1) his lawyer's representation fell below the standard of prevailing professional norms, and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (applying *Strickland* standard to claims of ineffective assistance under the Texas Constitution). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Strickland*, 466 U.S. at 697.

The *Strickland* test applies when the defendant claims he had ineffective assistance of counsel in pleading guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016). Competent advice requires that an attorney conduct independent legal and factual investigations sufficient to provide a firm command of the case and the relationship between the

---

[2] Appellant's retained lawyer withdrew. Appellant is represented on appeal by appointed counsel.

8

facts and each element of the charged offense. *Niswanger*, 335 S.W.3d at 615. Our review of counsel's performance is highly deferential, beginning with the strong presumption that counsel's actions were reasonably professional and motivated by sound strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To satisfy the prejudice prong of *Strickland* in the guilty plea context, the defendant must show there is a reasonable probability that, but for his lawyer's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59; *Torres*, 483 S.W.3d at 42; *Ex parte Luna*, 401 S.W.3d 329, 334 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We consider the totality of the circumstances in determining whether counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

We review an order granting or denying a motion for new trial for an abuse of discretion. *Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). Generally, this standard means that we must decide whether the trial court's ruling was arbitrary or unreasonable. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). As a reviewing court, we must afford "almost total deference" to a trial court's determination of historical facts and its application of the law to fact questions whose resolution turns on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We therefore view the evidence in the light most favorable to the trial court's ruling, and we will uphold that ruling if it was within the zone of reasonable disagreement. *See Webb*, 232 S.W.3d at 112.

## II.    Appellant did not establish his lawyer's performance was deficient

The motion for new trial alleged Hayes provided ineffective assistance of counsel by failing to adequately advise appellant about: (1) applicable law and the evidence against him, and (2) specific immigration consequences of his conviction.

With one exception noted below, appellant does not raise either point on appeal. Instead, appellant asserts Hayes provided him ineffective assistance of counsel in three other ways: (1) talking with appellant about his case while appellant was shackled to other detainees; (2) failing to prepare or investigate mitigating evidence for appellant's punishment; and (3) failing to object to the State's statement during closing argument at the sentencing hearing that the trial court should consider appellant's immigration status in assessing punishment.

### A.     Talking to appellant while he was shackled to other detainees

Appellant contends he was denied effective assistance of counsel because Hayes met with him to discuss his case multiple times while appellant was in court, shackled to other detainees. Appellant's motion for new trial states that except for two meetings in the Brazoria County jail, "the only other meetings that Defendant had with his attorney were in the hold over next to the courtroom in the presence of other inmates and the jailers."

At the hearing on the motion for new trial, Hayes agreed the courtroom meetings with appellant occurred "in front of other inmates and jailers and everybody here in the courtroom," though he noted he spoke Spanish during those meetings. Appellant testified he met with Hayes "here at the courtroom during [his] court settings" but did not elaborate on those meetings. The specific conduct alleged to be ineffective assistance of counsel—discussing the case with appellant while he was shackled to other detainees—was not apparent from context; the fact that a criminal defendant met with his lawyer in a room with other people does not imply the defendant was shackled.

More generally, in briefing this issue, appellant repeats some of the arguments from his motion for new trial regarding Hayes's failure to advise him adequately.  For example, appellant asserts he did not fully understand what was

happening and that Hayes did not fully answer his questions prior to the guilty plea. But Hayes testified otherwise. Given this conflicting evidence, the trial court was within its discretion to evaluate the witnesses' credibility and choose to believe Hayes over appellant. *See Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001).

**B.      Failing to prepare or investigate mitigating evidence for punishment**

Next, appellant asserts Hayes was deficient in preparing himself and appellant for the sentencing hearing. He acknowledges the questions Hayes did ask during the hearing but suggests they were insufficient: "[n]othing further, no family, no medical records, no jail records, no clarification of the Spanish written letters contained within the [PSI], nothing to provide the court in considering a range of punishment of 5-99, or life."

At the hearing on the motion for new trial, appellant questioned Hayes about his pre-plea work and strategy. By contrast, appellant did not question Hayes about his strategy for the sentencing hearing. When the record is silent as to counsel's strategy, we will not conclude the defendant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

The record is silent on, for example, why appellant's family members did not testify at the sentencing hearing. Hayes may have decided they should not testify, or they may have refused to testify when asked. The record also does not indicate how Hayes decided what questions to ask and not to ask appellant. On this silent record, we cannot conclude Hayes's performance with respect to the

sentencing hearing was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392.

### C. Failing to object to State's request that trial court consider appellant's immigration status in assessing punishment

Appellant's final claim of ineffective assistance concerns Hayes's failure to object to this statement during the State's closing argument at the sentencing hearing:

> We'd ask the Court to consider the criminal history, the fact that Mr. Hernandez is not even a citizen of this country and has no right to be in this country, yet has come into this country and is literally poisoning and dealing cocaine in the community, specifically in our county, Brazoria County, and making profits off – off our citizens.

Appellant does not specify whether the statement was improper for closing argument, whether the trial court was not permitted to consider his immigration status in assessing punishment, or both. *Cf. Infante v.* State, 25 S.W.3d 725, 727 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (distinguishing between consideration of illegal entry and alienage at sentencing phase).

At the hearing on the motion for new trial, appellant did not question Hayes about his strategy for the sentencing hearing, including whether or not to object to the State's comment. As explained above, on this silent record, we cannot conclude the defendant received ineffective assistance of counsel. *Goodspeed*, 187 S.W.3d at 392; *Garcia v. State*, 57 S.W.3d at 440.

We conclude appellant has not met his burden to establish his lawyer's performance fell below the standard of prevailing professional norms. Because he has not met his burden to establish deficient performance, we do not reach the question of whether appellant has shown he was prejudiced. *See Strickland*, 466 U.S. at 697. We overrule appellant's sole issue.

## CONCLUSION

Having overruled appellant's issue on appeal, we affirm the judgment of the trial court.

/s/ J. Brett Busby
   Justice

Panel consists of Justices Christopher, McCally, and Busby.
Do Not Publish — TEX. R. APP. P. 47.2(b).