**Ex parte Craig Allen NECESSARY, Appellant.**

**No. 01–10–00734–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 16, 2010.

Rehearing En Banc Overruled Feb. 8, 2011.

L.T. "Butch" Bradt, Teltschik Associates, P.C., Houston, TX, for Appellant.

Alan Curry, Chief Prosecutor, Appellate Division, Harris County District Attorney's Office, Patricia R. Lykos, Harris County District Attorney, Houston, TX, for appellee.

Panel consists of Chief Justice RADACK and Justices MASSENGALE and COX.*

**OPINION**

MICHAEL MASSENGALE, Justice.

Appellant Craig Allen Necessary has been charged with assault against a person with whom he had a dating relationship. Based on the same underlying factual allegations, Necessary has also been prohibited from certain conduct relating to the complainant in a magistrate's order for emergency protection. He sought pretrial habeas corpus relief from prosecution, ar-

guing that the Double Jeopardy Clause of the Fifth Amendment applies.

We affirm the trial court's judgment denying habeas corpus relief. We conclude no double-jeopardy violation has occurred because the protective order was not a criminal punishment and because jeopardy did not attach.

**I. Background**

This is an appeal from the trial court's denial of habeas corpus relief after Necessary filed a pretrial petition for writ of habeas corpus. *See* TEX.R.APP. P. 31. Appellant Craig Allen Necessary was charged by information with the offense of assault against a person with whom he had a dating relationship. *See* TEX. PENAL CODE § 22.01(a)(1), (b)(2) (Vernon Supp. 2010); TEX. FAMILY CODE § 71.0021(b) (Vernon 2009). The information specifically alleged that Necessary assaulted complainant L.M. by shoving her to the ground with his hand, shoving her head into a wall with his hand, and choking her neck with his hand. A week later, the trial court was asked to issue a magistrate's order for emergency protection against Necessary. *See* TEX.CODE CRIM. PROC. ANN. art. 17.292 (Vernon Supp. 2010). The trial court found that complainant L.M. was a victim of the offense and designated her a "protected individual." *See id.* art. 17.292(a)(1) (motion for emergency protection may be issued on the request of "the victim of the offense"). The trial court also found that Necessary was in a dating relationship relating to L.M. The magistrate entered the requested form order for emergency protection, which included the following boilerplate terms:

---

* The Honorable Lonnie Cox, Judge of the 56th District Court of Galveston County, participat-

ing by assignment.

... IT IS HEREBY ORDERED, pursuant to Article 17.292 of the Texas Code of Criminal Procedure that:

the Defendant is prohibited from:

- committing family violence involving the Victim;
- committing an act in furtherance of an offense under Section 42.071 [*sic*] (Stalking) of the Texas Penal Code involving the Victim;
- communicating directly with the Victim in a threatening or harassing manner;
- communicating a threat through any person to the Victim;
- possessing a firearm, unless the person is a peace office, as defined by Section 1.07, Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision;
- going to or near the residence of the Victim, specifically, within 200 feet of residence ...
- going to or near the place of employment or business of the Victim, more specifically within 200 feet of the place of employment....

*See id.* art. 17.292(c), (e). The form order also contained warnings specified by Code of Criminal Procedure:

A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR OR BY BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE OR A STALKING OFFENSE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS.

THE POSSESSION OF A FIREARM BY A PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO THIS ORDER MAY BE PROSECUTED AS A SEPARATE OFFENSE PUNISHABLE BY CONFINEMENT OR IMPRISONMENT.

NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER.

*See id.* art. 17.292(g).

The day before his trial on the assault charge, Necessary petitioned the trial court for a writ of habeas corpus. He argued that the Double Jeopardy Clause of the Fifth Amendment precluded his prosecution on the assault charge because the magistrate's protective order already constitutes "an adjudication of whether there was an offense committed as alleged in the information" against him. In response the State argued that the magistrate's order, which is specifically authorized by the Code of Criminal Procedure, is civil in nature and does not adjudicate guilt or impose punishment. The trial court denied relief, and Necessary appealed. On appeal he reurges his arguments that because of the magistrate's emergency protective order, the State is barred by "Double Jeopardy and collateral estoppel

double jeopardy" from prosecuting him for assault.

## II. Standard of Review

■ A trial court's denial of pretrial habeas corpus relief based on double jeopardy is immediately appealable. *See Ex parte Robinson,* 641 S.W.2d 552, 555 (Tex. Crim.App.1982). Ordinarily, we review the trial court's denial of habeas corpus relief under an abuse of discretion standard. *Ex parte Wheeler,* 203 S.W.3d 317, 324 (Tex.Crim.App.2006); *Sandifer v. State,* 233 S.W.3d 1, 2 (Tex.App.-Houston [1st Dist.] 2007, no pet.). In reviewing the trial court's decision to grant or deny habeas corpus relief, we view the evidence in the light most favorable to the trial court's ruling. *Wheeler,* 203 S.W.3d at 324; *Sandifer,* 233 S.W.3d at 2. We afford almost complete deference to the trial court's determination of historical facts supported by the record, especially when those factual findings rely upon an evaluation of credibility and demeanor. *See Ex parte Martin,* 6 S.W.3d 524, 526 (Tex.Crim.App.1999); *Sandifer,* 233 S.W.3d at 2. Likewise, we afford the same deference to the trial judge's rulings on applications of law to fact questions if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Sandifer,* 233 S.W.3d at 2. However, if the resolution of those ultimate questions turns on an application of legal standards, we review the determination de novo. *Id.* Because Necessary argues that the trial court has mis-

applied the law in this instance, we review the denial of pretrial habeas corpus relief de novo. *See id.*

## III. Double Jeopardy

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy for life or limb." U.S. CONST. amend. V.[1] The Double Jeopardy Clause "protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense." *Monge v. California,* 524 U.S. 721, 727–28, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615 (1998); *Weinn v. State,* 326 S.W.3d 189, 191–92 (Tex.Crim.App.2010). The Clause does not prohibit the imposition of all additional sanctions that could be commonly considered as punishment. *Hudson v. United States,* 522 U.S. 93, 98–99, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997). Rather, it "protects only against the imposition of multiple *criminal* punishments for the same offense." *Id.* at 99, 118 S.Ct. at 493 (citing *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938)).

■ "Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." *Id.* (citing *Helvering,* 303 U.S. at 399, 58 S.Ct. at 633). A court must first ask whether the legislature, 'in establishing the penaliz-

1. The federal constitutional protection against double jeopardy has been held to be sufficiently fundamental to fall within the guarantee of due process established by § 1 of the Fourteenth Amendment. *See McDonald v. City of Chicago,* —— U.S. ——, 130 S.Ct. 3020, 3061, 177 L.Ed.2d 894 (2010); *Benton v. Maryland,* 395 U.S. 784, 795–96, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707 (1969). The Texas Constitution also provides that "No person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be

again put upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction." TEX. CONST. art. I, § 14. Because the state constitutional right has not been invoked in this case, it is unnecessary for us to address the protection afforded by the state constitution, including whether or how that protection differs from the rights provided by the United States Constitution. *Heitman v. State,* 815 S.W.2d 681, 691 n. 23 (Tex.Crim.App.1991).

ing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " *Id.* (quoting *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980)). If the court determines that the legislature intended the punishment to be civil, it still must consider whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty. *See id.* This two-part analysis has been referred to as the "intent-effects test." *See Rodriguez v. State,* 93 S.W.3d 60, 67 (Tex.Crim.App.2002) (applying *Hudson* to determine whether a statute imposed a criminal punishment for purposes of ex post facto analysis). We employ the intent-effects test to determine whether that punishment was criminal in nature so as to trigger double-jeopardy concerns.

## A. Legislative intent

■ To the extent the magistrate's order can be considered a punishment, article 17.292 of the Texas Code of Criminal Procedure contains no express indication of any legislative intention that the statutory provisions constitute a criminal penalty.[2] The statute authorizes a magistrate to enter an order for emergency protection at a defendant's appearance before a magistrate after an arrest for an offense involving family violence or certain other listed offenses. TEX.CODE CRIM. PROC. ANN. art. 17.292. Within guidelines contained in the statute, the order may prohibit the arrested party from engaging in specified activities in relation to a "person protected by the order," including committing further assaults on a protected person, threatening or harassing a protected person's household, going to or near certain locations where the protected persons may be found such as their residences and places of employment, and from possessing a firearm. *Id.* art. 17.292(c)(1)(A), (c)(2), (c)(3). The order may also include prohibitions not directly linked to a person protected under the order, including any act in furtherance of an offense under Penal Code section 42.072 (stalking) and possessing a firearm (unless the person is a peace officer). *Id.* art. 17.292(c)(1)(B), (c)(4). The statute requires that the order state that a violation may be punished by a fine or confinement in jail, and it identifies other criminal penalties for the violation of the emergency protective order. *Id.* art. 17.292(g).

The statute providing for a magistrate's order for emergency protection is fully consistent with the Legislature's prior express acknowledgement, codified in a separate part of the Code of Criminal Procedure, that "[f]amily violence is a serious danger and threat to society and its members," and that "[v]ictims of family violence are entitled to the maximum protection from harm or abuse or the threat of harm or abuse as is permitted by law." TEX. CODE CRIM. PROC. ANN. art. 5.01(a) (Vernon 2005). The Legislature has expressed its desire that "[i]n any law enforcement, prosecutorial, or judicial response to allegations of family violence, the responding law enforcement or judicial officers shall protect the victim, without regard to the relationship between the alleged offender and victim." *Id.* art. 5.01(b).

Moreover, we note that article 17.292 authorizes the issuance of protective orders "after arrest for an offense involving

---

**2.** Although the relevant statute has been codified as part of the Code of Criminal Procedure, that factor is not dispositive of our inquiry. *Cf. Fant v. State,* 931 S.W.2d 299, 306–07 (Tex.Crim.App.1996) (statutory language providing for forfeiture of contraband under chapter 59 of the Code of Criminal Procedure indicates the creation of a civil procedural mechanism, not criminal punishment).

family violence," but before there has been any conviction for such an offense. It is an axiom of due process that until proven guilty of an offense beyond a reasonable doubt, all persons are presumed innocent and therefore cannot be convicted of or punished for the offense. *See, e.g.,* TEX. CODE CRIM. PROC. ANN. art. 38.03 (Vernon Supp.2010); *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970); *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 130 S.Ct. 515, 175 L.Ed.2d 350 (2009). We do not read article 17.292 to suggest otherwise, as the Legislature necessarily would have done if it authorized a criminal punishment after arrest but before a conviction for an offense.

Necessary provides no evidence of a punitive intent inherent in this statute, and based on our independent analysis, we find none. *See State v. Collazo*, 264 S.W.3d 121, 129 (Tex.App.-Houston [1st Dist.] 2007, pet. ref'd). We thus conclude that the text and structure of article 17.292 demonstrate a legislative intent that the emergency orders authorized by that statute are for the purpose of protecting putative victims of family violence, and not for the purpose of imposing a criminal punishment.[3]

## B. Statutory effects

■ Having concluded that the Legislature intended article 17.292 to create a civil remedy, we must consider "whether the statutory scheme [is] so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson,* 522 U.S. at 99, 118 S.Ct. at 493. Only the clearest proof that the purpose and effect of the restraining order are punitive will suffice to override a manifest legislative preference for a civil sanction. *See, e.g., United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 365, 104 S.Ct. 1099, 1106, 79 L.Ed.2d 361 (1984). Relevant considerations for the evaluation of punitive effects of an otherwise civil penalty, commonly referenced as the *Kennedy* factors, include:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned....

*Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963); *see also Rodriguez v. State,* 93 S.W.3d 60, 68 (Tex.Crim.App. 2002); *Collazo,* 264 S.W.3d at 130. We consider the effects of an emergency pro-

---

**3.** We also note that several Texas courts have rejected Double Jeopardy challenges to criminal prosecutions following the entry of family-violence protective orders authorized by similar statutory provisions in the Family Code. *See, e.g., Harris v. State,* 164 S.W.3d 775, 782 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd) ("Certainly, the Legislature never intended a protective order to constitute a 'prosecution' or a 'punishment.' In fact, it has authorized the issuance of a protective order and the subsequent criminal prosecu-

tion for the same underlying conduct."); *Ex parte Chairez,* No. 08-00-00083–CR, 2001 WL 63033, at *3 (Tex.App.-El Paso Jan. 25, 2001, no pet.) (holding that the purpose of Family Code provisions authorizing protective orders to prevent domestic violence was to "protect the victims, not to punish the offenders"); *Harren v. State,* No. 03-99-00752–CR, 2000 WL 766263, at *2 (Tex.App.-Austin June 15, 2000, no pet.) ("As the name implies, the purpose of a protective order is to protect against future acts of family violence.").

tective order authorized by article 17.292 under each of these factors in turn.

### 1. Affirmative disability or restraint

The emergency protective order at issue imposes affirmative restraints on Necessary's conduct, though they are substantially redundant of existing laws already applicable to him proscribing the commission of crimes. For example, the order prohibits Necessary from committing family violence, stalking the subjects of the order, and threatening or harassing them. Regardless of the emergency protective order, this conduct is proscribed by law, and an order prohibiting Necessary from engaging in such conduct cannot be considered a meaningful restraint. *See* TEX. PENAL CODE ANN. §§ 22.01 (assault), 42.072 (stalking), 42.07 (harassment) (Vernon 2003 & Supp.2010); *see also* TEX. CODE CRIM. PROC. ANN. art. 42.013 (Vernon 2006) (requiring court to make affirmative finding of family violence); TEX. FAM.CODE ANN. § 71.004 (Vernon 2008) (defining family violence).

While the order also precludes Necessary from possessing a firearm, that restraint is "certainly nothing approaching the 'infamous punishment' of imprisonment." *Hudson*, 522 U.S. at 104, 118 S.Ct. at 496. Thus, we conclude that this factor does not weigh heavily in favor of finding the statute to be criminally punitive.

### 2. Historical treatment

As we have noted, protective orders have historically been considered civil in nature and designed to prevent family violence and protect the victims, to "hold things in abeyance while final adjudication is pending" as the trial court observed. This factor does not weigh in favor of a finding that the magistrate's order was criminally punitive.

### 3. Finding of scienter

Article 17.292 does not include any requirement of a culpable mental state. Rather, it includes only the requirement that the defendant was arrested for an offense involving family violence. This factor does not weigh in favor of finding that the magistrate's order was criminally punitive. *See Collazo*, 264 S.W.3d at 130.

### 4. Traditional aims of punishment

"When a statute promotes the traditional aims of punishment, retribution and deterrence, its effect is more likely to be considered punitive." *Rodriguez*, 93 S.W.3d at 73 (citing *Hudson*, 522 U.S. at 104, 118 S.Ct. 488). Here the statute serves to deter the defendant from committing further acts of family violence by providing a specific avenue for an additional criminal penalty, i.e., violation of the protective order. *See* TEX.CODE CRIM. PROC. ANN. art. 17.292(g). However, it does not serve to deter others from emulating the defendant's conduct, which is one of the traditional goals of criminal punishment. *See Hudson*, 522 U.S. at 105, 118 S.Ct. at 496. We conclude that any effects of the statute that bear on the traditional goals of punishment are incidental and not primary. *See Collazo*, 264 S.W.3d at 130. This factor does not weigh heavily in favor of finding the order to be criminally punitive. *See Hudson*, 522 U.S. at 102, 118 S.Ct. at 494 ("[A]ll civil penalties have some deterrent effect."); *Rodriguez*, 93 S.W.3d at 73 ("Where the legislature has not manifested an intent to promote the traditional aims of punishment, it behooves us to refrain from searching for one in the statute's indirect effects.").

### 5. Application to criminal behavior

A statute that applies to behavior that is already a crime is more likely to be

characterized as a criminal sanction. *Rodriguez,* 93 S.W.3d at 74; *Collazo,* 264 S.W.3d at 130; *see Kennedy,* 372 U.S. at 168, 83 S.Ct. at 567. Article 17.292 applies to behavior that is already a crime and it specifically provides for further criminal penalties for violating the protective order. While this weighs in favor of finding that the magistrate's order, it is not dispositive. *See United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993) (rejecting "same-conduct" test for double-jeopardy purposes).

### 6. Alternative purpose

"Under this factor, we inquire whether there is an alternative, nonpunitive purpose that may rationally be connected to the statute." *Rodriguez,* 93 S.W.3d at 74 (citing *Kennedy,* 372 U.S. at 168–69, 83 S.Ct. 554, 567–68). As we have discussed, the primary purposes of this statute are to prevent family violence, protect victims of family violence, and maintain the status quo while adjudication may be conducted. This factor weighs against a conclusion that the statute is criminally punitive.

### 7. Excessiveness

Under this factor, we consider whether the sanction imposed by the statute under consideration is "so grossly disproportionate to the harm caused as to constitute 'punishment.'" *Hudson,* 522 U.S. at 101, 118 S.Ct. at 494 (cautioning that this issue is not dispositive in double-jeopardy context). The sanction imposed by article 17.292 is limited in both time and in relationship to the particular victim or victims named in the order. Moreover, the magistrate's order for emergency protection serves a legitimate governmental interest in preventing domestic abuse, protecting victims, and maintaining the status quo pending disposition of the charges against the defendant. This factor does not weigh in favor of a conclusion that the statute is criminally punitive.

\* \* \*

Weighing all of the *Kennedy* factors, we conclude that article 17.292 is civil in nature and not criminally punitive. Therefore, we hold that prosecuting Necessary for the underlying assault after the imposition of the magistrate's order for emergency protection does not implicate the multiple-punishments double-jeopardy bar.

### IV. Collateral Estoppel

■ In addition to arguing that the magistrate's order was a criminal punishment, Necessary also argues that it was based upon the same factual information that will be required to be proven upon trial of the underlying offense. Thus, Necessary argues, a subsequent prosecution of the underlying offense is barred by collateral estoppel double jeopardy.

■ "The doctrine of collateral estoppel is a child of the constitutional protection against double jeopardy." *Ex parte Ueno,* 971 S.W.2d 560, 562 (Tex.App.-Dallas 1998, pet. ref'd) (citing *Ladner v. State,* 780 S.W.2d 247, 250 (Tex.Crim.App.1989)).

> 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

*Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). Thus, "the traditional bar of double jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime." *Ladner,* 780 S.W.2d at 253–54.

"There is no due process basis, independent of the double jeopardy clause, for the application of collateral estoppel." *Ueno,* 971 S.W.2d at 562 (citing *Nichols v. Scott,* 69 F.3d 1255, 1269–70 (5th Cir. 1995)). Therefore, to prevail on a theory of collateral estoppel, Necessary must show that his complaint would protect him from double jeopardy, which requires that he was previously placed in jeopardy. *See Ueno,* 971 S.W.2d at 562. Jeopardy attaches in a jury trial when the jury is empaneled and sworn, or, in the case of a bench trial, when the defendant pleads to the indictment. *Ortiz v. State,* 933 S.W.2d 102, 105 (Tex.Crim.App.1996).

Necessary asserts that the "State is barred from litigating the facts already found and adjudicated by the trial court." This statement lacks support in the appellate record. Nothing in the record indicates that there has been an adjudication of any facts in this case, that Necessary pleaded to an indictment, or that a jury was ever empaneled. Necessary has not been put to trial on the facts of the underlying offense involving family violence. "Because jeopardy never attached, double jeopardy is not implicated." *Ueno,* 971 S.W.2d at 563. Therefore, collateral estoppel provides no relief for Necessary.

## CONCLUSION

Having concluded that article 17.292 is not criminally punitive and that jeopardy has not yet attached in this case, we hold it was proper to deny Necessary's request for habeas corpus relief. Accordingly, we affirm the ruling of the trial court.