**Opinion issued February 10, 2015.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00644-CR

————————————

## EX PARTE JUAN ALBERTO HUERTA, Appellant

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1084062-A**

---

## MEMORANDUM OPINION

Juan Alberto Huerta appeals from the trial court's order denying him habeas

corpus relief pursuant to Article 11.072 of the Texas Code of Criminal Procedure.[1]

Huerta contends that his trial counsel was ineffective when, in 2006, he allegedly

---

[1]   *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 8 (West 2005) (providing for appeal in felony or misdemeanor case in which applicant seeks relief from order or judgment of conviction ordering community supervision).

failed to advise Huerta of the immigration consequences associated with his guilty plea. We affirm the trial court's judgment.

## Background

In 2006, Huerta, pursuant to a plea agreement, pleaded guilty to the state jail felony offense of possession of a controlled substance, cocaine weighing less than one gram.[2] The trial court deferred a finding of guilt and placed Huerta on community supervision for a period of three years. In January 2009, the trial court found that Huerta had fulfilled the conditions of his community supervision and discharged him.

On November 7, 2012, Huerta filed his verified application for a writ of habeas corpus. Relying on *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010), Huerta contended that his guilty plea was involuntary because his trial counsel was ineffective because he did not inform, or misinformed, Huerta of the immigration consequences of his plea. According to Huerta:

> - Before pleading guilty, I presented my BI/B2 Visa to my criminal defense lawyer but he did not advise me of any immigration consequences.
>
> - Before I pled guilty to felony Possession of Cocaine, my criminal defense lawyer did not tell me to seek advice from an immigration lawyer before pleading guilty to a felony drug charge.
>
> - My criminal defense lawyer did not explain and/or advise me of any immigration consequences of accepting the plea offer.

---

[2] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (West 2010).

2

- I relied on the questioning and advice of my criminal defense lawyer.

- I was not advised by my criminal defense attorney that accepting the plea offer would result in my deportation from the United States.

- I was not advised by my criminal defense lawyer that this felony plea would result in a felony conviction for Immigration purposes.

- I would not have pled guilty had I known I would not be able to become a United States citizen as a result of this plea.

- I would not have pled guilty had I known I would be deported as a result of this guilty plea.

- I would have chosen to fight in trial if necessary, had I known the immigration consequences of this plea.[3]

As ordered by the trial court, Huerta's trial counsel filed his affidavit regarding his representation of Huerta.

On June 11, 2014, after the United States Supreme Court decided *Chaidez v. United States*, 133 S. Ct. 1103 (2013), Huerta filed his response to the State's answer and memorandum in support of his application. He acknowledged that "*Padilla* is a 'new rule' that does not apply retroactively in those cases that were final before *Padilla*." He contended, however, that certain pre-*Padilla* claims for post-conviction relief, including "the right of an immigrant to establish ineffective assistance of counsel for affirmative mis-advice" remained. Huerta asserted that trial counsel was ineffective because he did not accurately advise, or misadvised,

---

[3] Huerta's affidavit in support of his application stated that, at the time he entered his plea, he "had not been informed, or had been misinformed, by [his] attorney in accordance with the stated facts above."

Huerta about the consequences of his guilty plea or fulfill "the duty to investigate a client['s] consequences of a guilty plea."

In August 2014, the trial court held a hearing on Huerta's application. Huerta was present at the hearing but did not testify. Exhibits admitted, with no objection, included Huerta's application affidavit and exhibits, which included a copy of his then current B1/B2 visa and Texas driver's license; and the "plea packet," which included a copy of the "Court's Admonishments to Defendant" that Huerta initialed and signed. The admonishments state, "<u>CITZENSHIP</u>: If you [are] not a United States Citizen, a plea of guilty or nolo contendere may result in your deportation, exclusion from admission to the United States or denial of naturalization under federal law." The admonishments further state, "These papers were explained to me in my preferred language, Spanish, by an interpreter, namely Veronica Huerta." The statement "I am a citizen of the United States" was marked through and "Legal Resident" handwritten on the page. The admonishments conclude, "Joined by my counsel, I state that I understand the foregoing admonishments and I am aware of the consequences of my plea. I am mentally competent to stand trial and my plea is freely and voluntarily made." The plea packet also includes a "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession," signed by the trial judge and indicating that he

4

"admonished [Huerta] of the consequences of his plea[.]" The trial court documents reflect that Huerta waived a record of his plea proceedings.

The trial court also admitted, with no objection, a copy of trial counsel's affidavit. Counsel stated that he no longer had Huerta's defense file but had reviewed the State's file and his practice was to ask a defendant if he were a citizen. "If a client indicates that they are not a U.S. citizen then I inform them of the potential consequences that they may be removed from the country by federal immigration officials" and "[i]f the defendant had requested to speak to an attorney I would have asked to have the case reset to give the defendant an opportunity to do so." Counsel further stated that his customary practice is to explain all admonishments and plea papers to a defendant and allow a plea "only after they indicate that they understand the admonishments and the terms of the plea offer . . . ." Counsel stated that this practice was corroborated by Huerta's initials on the admonishments and his signature on the plea papers.

At the hearing, Huerta's counsel argued that trial counsel misadvised Huerta because his case "would be dismissed under state law" but not under federal immigration law and a drug conviction was "mandatory detention under immigration law." Counsel stated that Huerta had been prejudiced by being unable "to go forward with any kind of immigration application . . . ." The State responded that *Padilla* was not retroactive and did not apply, and Huerta had not

5

met his burden to show that counsel's representation fell below an objective standard of reasonableness and was deficient. At the end of the hearing, the trial court made the following findings of fact:

> [T]he plea was entered into on . . . October 18th, 2006. The deferred adjudication was served out and that deferred adjudication was dismissed in 2009 as per the records that are part of the record in this case, the exhibits. That is a pre-Padilla . . . . I do find that [trial counsel] did appear from all the evidence presented in the case appeared to inquire into the immigration status of the defendant in the case. And that the records of the plea bargain indicate that Mr. Huerta, the petitioner and the defendant at that time, indicated that he was a legal resident. Did cross out that he was not a citizen of the United States. That the plea was not involuntary due to ineffective assistance of counsel and that counsel did not fall below a reasonable expectation of performance or that his conduct was not defective.

The trial court denied Huerta's requested habeas relief.

### Ineffective Assistance of Counsel

### A.    Standard of review

We review a trial court's denial of habeas corpus relief for an abuse of discretion. *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011); *Ex parte Wheeler*, 203 S.W.3d 317, 326 (Tex. Crim. App. 2006); *Ex parte Necessary*, 333 S.W.3d 782, 787 (Tex. App.—Houston [1st Dist.] 2010, no pet.). In conducting our review, we view the facts in the light most favorable to the trial court's ruling. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). We review questions of law de novo. *Ex parte Necessary*, 333 S.W.3d at 787. Huerta had the burden to prove his claim for habeas relief by a preponderance of the

6

evidence. *See Ex parte Peterson*, 117 S.W.3d 804, 818 (Tex. Crim. App. 2003); *State v. Webb*, 244 S.W.3d 543, 547 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to a criminal defendant. *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). The *Strickland* two-pronged test for ineffective assistance of counsel applies in the plea context. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985); *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)); *see also Ex parte Roldan*, 418 S.W.3d 143, 145 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Ex parte Murillo*, 389 S.W.3d 922, 926 (Tex. App.—Houston [14th Dist.] 2013, no pet.)). To establish ineffective assistance of counsel, the applicant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms and (2) there is a reasonable probability that but for counsel's deficiency, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068; *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Failure to show either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

7

**B.     No basis exists to establish that the trial court abused its discretion**

Huerta contends that his trial counsel's representation was deficient because he did not adequately investigate, and misadvised Huerta about, the immigration consequences of the guilty plea. In his brief filed in this Court, Huerta more specifically contends that "the totality of the circumstances show that [he] was clearly misled on a material issue" and "was affirmatively and incorrectly advised about the immigration consequences of his plea to a drug charge." He asserts that these circumstances included a lack of "oral Court admonishments regarding immigration consequences," no "proper translations of the written admonishments," and an incorrect conclusion that he was a legal resident. He states that he "was under the belief that a guilty plea and dismissal under a deferred adjudication would have no immigration consequences."

In *Padilla*, the Supreme Court held that the Sixth Amendment requires a criminal defendant's attorney to provide advice about the risk of deportation arising from a guilty plea. 559 U.S. at 366, 130 S. Ct. at 1482. When the deportation consequences are "truly clear," counsel's performance is deficient under the *Strickland* standard if counsel fails to advise a defendant that he would be deported. *Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483. When the consequences are "not succinct and straightforward," counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse

immigration consequences." *Id.* However, the United States Supreme Court subsequently held that *Padilla* does not apply retroactively to a conviction that was final before *Padilla* was decided. *Chaidez*, 133 S. Ct. at 1113; *see Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013) (adhering to *Chaidez*'s holding that *Padilla* does not apply retroactively). Thus, a defendant whose conviction became final before *Padilla* cannot benefit from its holding. *See Chaidez*, 133 S. Ct. at 1113; *Ex parte De Los Reyes*, 392 S.W.3d at 679.

Here, Huerta's conviction was final in 2006, before *Padilla* was decided.[4] Although he acknowledged that *Padilla* does not apply retroactively in the trial court, Huerta contended that the law allows post-conviction writs "where there was 'affirmative mis-advice' regarding immigration consequences." He contends that *Chaidez* "reaffirmed *Padilla*'s core holding that for at least the past fifteen years, professional norms have required defense counsel to advise of immigration consequences" and he was "entitled to correct advice regarding deportation consequences of the guilty plea 'when the deportation consequence is truly clear.'" According to Huerta, the consequences—his "removability" and "inadmissibility"—were certain, and, thus, any statement that he "'may' be deported" was not accurate. Huerta asserted additionally that pre-*Padilla* cases did

---

[4] A guilty plea and term of deferred adjudication community supervision constitutes a conviction for federal immigration law purposes. *See State v. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013) (citing 8 U.S.C. § 1101(a)(48) and *Moosa v. INS*, 171 F.3d 994, 1005–06 (5th Cir.1999)).

not absolve defense attorneys "who represent non-citizens of their duty to investigate immigration consequences."

Because Huerta's conviction was final before *Padilla* was decided, Huerta cannot benefit from *Padilla* and pre-*Padilla* law applies. Under pre-*Padilla* law, "while the Sixth Amendment assures an accused of effective assistance of counsel in criminal prosecutions, [it] does not extend to 'collateral' aspects of the prosecution." *Ex parte Luna*, 401 S.W.3d 329, 334 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (quoting *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997)). Immigration consequences of a guilty plea were considered collateral and did not support an ineffective assistance of counsel claim. *See State v. Jimenez*, 987 S.W.2d 886, 887–88 (Tex. Crim. App. 1999) ("That a guilty plea may result in deportation is generally considered a collateral consequence."); *Ex parte Luna*, 401 S.W.3d at 334 ("Immigration consequences of a guilty plea are considered collateral . . . ."). Accordingly, "a pre-*Padilla* plea is not involuntary even if counsel were deficient in advising his client regarding the immigration consequences." *Ex parte Roldan*, 418 S.W.3d at 146 (citing *Ex parte Sudhakar*, 406 S.W.3d 699, 702 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd)). We, therefore, conclude that the trial court did not abuse its discretion in denying Huerta's application for a writ of habeas corpus.

## Conclusion

Accordingly, we affirm the trial court's judgment.


Russell Lloyd
Justice

Panel consists of Justices Jennings, Massengale, and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).