**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00309-CR

———————————

## JUAN RUBEN GARCIA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 300th District Court
Brazoria County, Texas
Trial Court Case No. 65014-1

## MEMORANDUM OPINION

A jury convicted appellant Juan Ruben Garcia of four counts of aggravated sexual assault of a child. *See* TEX. PENAL CODE § 22.021(a)(1)(B). It assessed punishment at 10 years in prison for each count and recommended that Garcia be

placed on community supervision. The court suspended the sentence, and it placed Garcia on community supervision for 10 years.

Garcia filed an application for a writ of habeas corpus challenging the validity of the order imposing community supervision. *See* TEX. CODE CRIM. PROC. art. 11.072 §§ 1, 2(b)(1). He asserted that his trial attorney provided him with ineffective assistance of counsel. The trial court entered findings of fact and an order denying Garcia's application.

On appeal, Garcia contends that he was denied effective assistance of counsel because his trial counsel failed to object to improper bolstering and improper outcry testimony, and he failed to object to hearsay statements made by the complainant. We conclude that the trial court did not abuse its discretion in determining that Garcia failed to prove that his counsel's performance was constitutionally deficient. Accordingly, we affirm the order of the trial court.

## Background

Complainant A.B. lived in a two-bedroom apartment with her mother and her sister. When A.B. was nine or ten years old, her aunt moved into the apartment with her husband, appellant Juan Ruben Garcia, and their two young sons. Approximately two or three years later, the Garcia family moved out of the apartment.

2

When A.B. was 15 years old, she confided in her neighbor Sandra that Garcia had sexually abused her while the families lived together. Later, when A.B. was 16 or 17, she confided in her cousin's girlfriend, Gloria, that her uncle molested her when she was a child. Gloria told one of A.B.'s relatives, Patricia, that A.B. needed help. Patricia told A.B.'s mother to talk to her, but she did not explain why. Eventually A.B. told her mother that she had been sexually abused by Garcia.

In March 2009, A.B. was taken by her mother to the Alvin Police Department to report the abuse. A.B. spoke with a crime-victim liaison. Then she told Sergeant L. Barkdull about the abuse, but she did not want charges to be filed. There was no further investigation at that time.

Two years later, in April 2011, A.B. returned to the Alvin Police Department, this time with Patricia. She spoke with the same crime-victim liaison to whom she had spoken in 2009. Separately, she spoke with Detective G. White, who interviewed her about the details of the sexual abuse and made a written report. Following an investigation led by Detective J. Morrison, also of the Alvin Police Department, a grand jury indicted Garcia of four counts of aggravated sexual assault of a child.

At trial, A.B. testified that after Garcia's family moved into her family's apartment, her mother and aunt took night classes together and would leave the

3

children at home with Garcia. A.B. testified that after her mother and aunt left, and she and the other children were in bed, Garcia would get her from her room and bring her to the living room where he would sexually abuse her. Garcia penetrated her vagina with his penis and his fingers, made her perform oral sex on him, and eventually penetrated her anally. The abuse occurred in the living room most of the time, but Garcia sometimes abused A.B. in her room when no one else was home. A.B. could not recall the first instance of abuse, but she testified that she "felt like it was on a normal basis."

A.B. testified that the abuse stopped when she was 13 because Garcia moved out. She had not told anyone about the abuse while it was happening, and she did not tell anyone for some time afterwards. Her neighbor Sandra was the first person she told about the abuse, when she was 14 or 15 years old. A.B. believed that Gloria was the next person in whom she confided. She later told her school principal about the abuse.

Sgt. Barkdull testified about A.B.'s 2009 report of the sexual abuse. A.B. had reported that Garcia started sexually abusing her when she was eleven years old. A.B. stated that the abuse started with Garcia touching her over her clothing, and he then moved to touching her underneath her clothing. According to the 2009 report, the abuse continued to progress, and Garcia forced A.B. to perform oral sex on him and penetrated her vagina with his fingers and with his penis. Garcia would

4

go into A.B.'s bedroom when the other children were asleep and wake her to initiate the abuse. The abuse went on for two years. A.B. could not estimate how many incidents of abuse had occurred during that period, but she reported that it happened numerous times. A.B. reported that the abuse occurred almost every time Garcia was left alone with her and the other children, which happened when A.B.'s mother and aunt left to attend night school together.

A.B. told Sgt. Barkdull that she had not come forward before because Garcia threatened to abuse her sister if she reported the abuse. Sgt. Barkdull explained what the next steps in the investigation process would entail, but A.B. was not interested in moving forward with her report at the time. Sgt. Barkdull made a written report, but A.B. did not give a written statement, and there was no further investigation.

Det. White also testified about his 2011 interview, when A.B. stated that Garcia sexually abused her from the ages of 10 to 13 years old. She reported that the abuse occurred at night when her mother and aunt were in class and the other children were in bed. Garcia would go into A.B.'s room and wake her, then he would take her to the living room to sexually assault her. A.B. told Det. White that the abuse included vaginal, oral, and anal penetration. Det. White testified that he specifically asked A.B. whether Garcia had penetrated her vagina with his penis "the first time," and she said yes.

5

Det. White testified that while interviewing A.B., he had looked for signs of deception as well as any motive to fabricate allegations. He found neither. The State asked him whether the statements given by A.B. in 2009 and 2011 were consistent. Det. White had not known about A.B.'s previous report when he first spoke with her, but he later reviewed Sgt. Barkdull's written report from 2009. He testified that the 2009 report was consistent with the details A.B. shared during his interview. Det. White stated that he was not concerned that A.B. told him that the abuse included anal penetration although there was no mention of that in 2009. He testified, based on his training, that a few "slight" inconsistences between different recitations of the same story was "natural." He also stated that, in his experience, sexual-abuse victims who had been subject to anal penetration did not always initially report that. Det. White testified that his comparison of Sgt. Barkdull's written report and the abuse A.B. reported to him did not cause him "any problem or cause for concern at all."

After his interview with A.B., Det. White prepared a written witness report. He spoke with the crime-victim liaison who met A.B. in 2009 and 2011. He also spoke with A.B.'s mother and her aunt Patricia.

Det. Morrison testified that she was assigned to the investigation following A.B.'s 2011 report. Although she did not interview A.B. about the details of the abuse, Det. Morrison reviewed Sgt. Barkdull's 2009 report and Det. White's 2011

6

report. The State asked Det. Morrison about her comparison of the allegations contained in each report. Det. Morrison testified that the 2009 and 2011 reports were "very consistent," and that she had no concern that A.B. had lied in either.

As part of her investigation, Det. Morrison interviewed Garcia about A.B.'s allegations. He told her he had no idea what she was talking about, and he denied ever having any sexual contact with A.B. Garcia had admitted that his family lived with A.B.'s family for two or three years, but he initially denied ever being left alone with the children. Later, he conceded that he had been alone with the children when his wife and A.B.'s mother went to class, but he stated it was only for an hour.

Sandra and Gloria each testified about A.B.'s outcries. Sandra testified that A.B. told her that Garcia would go into her bedroom while her mother and aunt were at class and "touch her." He would "walk around in his boxers with his private part hanging out," and "he actually did have sex with her." Sandra testified that A.B. only told her about the sex once, and she knew "there was a lot more" that A.B. did not want to tell.

Gloria testified that A.B. had told her that "her aunt's husband" had molested her as a child. She further testified that A.B. could not remember how old she was when the abuse occurred, but she said it had happened "at her aunt's house" and lasted for two years.

7

A.B.'s mother testified about the time period when Garcia had lived in her home, including the sleeping arrangements inside the apartment and the transportation and childcare arrangements. She and her sister took night classes, leaving Garcia at home with the children. A.B.'s mother did not know about the abuse while Garcia was living in her home, nor did she suspect anything. A.B. eventually told her mother that Garcia had sexually abused her, but she would not give any details. A.B.'s mother confronted her sister and Garcia. Then she took A.B. to the police station the following day to report the abuse.

After the State rested, Garcia presented his defense. Garcia's wife and their two sons testified about the years they lived with A.B. They each testified about the family relationships during that time period and in the subsequent years. Each denied observing any signs of abuse.

The jury found Garcia guilty of four counts of aggravated sexual assault of a child. After filing a notice of appeal, then subsequently dismissing the appeal, Garcia filed an application for a writ of habeas corpus. Garcia's application argued that he was provided ineffective assistance of counsel because his attorney at trial failed to object to various inadmissible testimony.

In response to Garcia's application, the trial court entered an order designating issues to be resolved through the submission of affidavits. The court ordered Garcia's trial counsel to submit an affidavit responding to the issues. In his

affidavit, Garcia's counsel explained that in his 37 years of practicing law, he has found that a general practice of avoiding objection unless "absolutely necessary" is better for his client. He explained that, in his experience, too many trial objections lead the jury to feel as if counsel is trying to "hide something from them." He stated:

> When I feel that an objection is likely to be over ruled, or even granted but the court is likely to tell opposing counsel rephrase the question for an example, or even if it is granted but the Court of Appeals is likely to rule that it is harmless error, it is better not to do something that may overemphasize something in the jurors' mind, or in some cases even wake a juror up.

The affidavit addressed each issue designated by the trial court. In addition to other reasons for not objecting to the testimony of Det. White or Det. Morrison, counsel explained he did not want the jury to focus on their statements. He did not object to Gloria's testimony because he did not believe it to be harmful.

After reviewing the court's file and submissions by both parties, the trial court entered findings of fact, including findings that trial counsel's "general trial strategy was to avoid objections unless absolutely necessary because jurors often misinterpret objections as an attempt to hide evidence and because an objection will emphasize the evidence objected to," and "this was a valid trial strategy." To the extent counsel failed to object to evidence, the court found that Garcia was not prejudiced, "given the other evidence admitted." The court concluded that Garcia

9

failed to show by a preponderance of the evidence that trial counsel was ineffective, and it denied the application. Garcia appealed.

**Analysis**

Garcia argues that he was denied effective assistance of counsel because his attorney failed to object to testimony about the truthfulness of A.B.'s allegations, which improperly bolstered her testimony. He also argues that his counsel was ineffective by failing to object to testimony from an improper outcry witness and to inadmissible hearsay.

We review a trial court's decision to deny a writ of habeas corpus for an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ex parte Necessary*, 333 S.W.3d 782, 787 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We view the facts in the light most favorable to the trial court's ruling, affording almost total deference to its findings of fact and conclusions of law that are supported by the record. *Ex parte Vasquez*, 499 S.W.3d 602, 620 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). This is true even when the findings are based on affidavits rather than live testimony. *Ex parte Pho Ri Ma*, No. 01-14-00462, 2014 WL 4783007, at *1 (Tex. App.—Houston [1st Dist.] Sept. 25, 2014, pet. ref'd) (mem. op., not designated for publication) (citing *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd)). "We afford the same amount of deference to the trial court's rulings on application of law to fact

10

questions if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. . . . However, if the resolution of those ultimate questions turns on an application of legal standards absent any credibility issue, we review the determination de novo." *Vasquez*, 499 S.W.3d at 620 (internal quotations omitted).

A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984). This right does not guarantee "errorless or perfect" representation by counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Rather, claims of ineffectiveness are judged by whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S. Ct. at 2064.

To be entitled to relief on his ineffective-assistance claim, Garcia was required to prove by a preponderance of the evidence that his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See id.* at 687–88, 104 S. Ct. at 2064, 2065; *see also Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Garcia also was required to show that his defense was prejudiced as a result of counsel's deficient performance, meaning that there is a reasonable probability that the result would have been different but for the deficiencies in representation. *Strickland*, 466 U.S.

at 694, 104 S. Ct. at 2068; *Bone*, 77 S.W.3d at 833. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

There is a strong presumption that a trial counsel's conduct falls within the wide range of reasonable professional assistance or trial strategy. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). In reviewing counsel's performance, we look to the "totality of the representation and the particular circumstances of each case." *Id.*

## I. Improper bolstering

Garcia contends that A.B.'s testimony was improperly bolstered by the testimony of Det. White and Det. Morrison because each witness improperly testified about A.B.'s credibility. "Bolstering" refers to any evidence offered for the sole purpose of convincing the factfinder that a particular witness or other source of evidence is credible, "without substantively contributing to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993) (internal quotations omitted). The term "bolstering" encompasses several different rules of evidence. *See Rivas v. State*, 275 S.W.3d 880, 886–87 (Tex. Crim. App. 2009).

Garcia complains of the following line of questioning during the State's direct examination of Det. White:

> Q. When she told you [what had happened to her], were you looking for signs of deception?
>
> A. Yes.
>
> Q. Did you note any type of deceptive signs in dealing with [A.B.]?
>
> A. None whatsoever.
>
> Q. Did you look to see if there was any motive in making these allegations?
>
> A. Yes, ma'am, of course.
>
> Q. And what type of motive would you have been looking for?
>
> A. It could have been any number of things. One, maybe some kind of personal vendetta against the person. I've had them come across maybe as a civil liability before. Anything like that.
>
> Q. Did you find there to be any motive in her making a false allegation?
>
> A. No, ma'am, I did not. She had nothing to gain.

In the affidavit submitted in response to the trial court's order, Garcia's trial attorney explained that he did not object to Det. White's testimony because he was not presented as an expert and his testimony was presented as an "observation." He said that an objection to the testimony "whether granted or not by the trial court has the effect on the jury of imprinting it more firmly in their minds, and leaving counsel with the job of trying to 'unring the bell.'"

13

The trial court found that counsel's explanation reflected a valid trial strategy. An attorney's decision not to object to inadmissible evidence because such objection might draw unwanted attention to a particular issue or fact that is unfavorable to the defendant may be a reasonable trial strategy. *See, e.g.*, *Cooper v. State*, 788 S.W.2d 612, 618 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd); *Guerra v. State*, No. 01-15-00650-CR, 2016 WL 6212999, at *17–18 (Tex. App.—Houston [1st Dist.] Oct. 25, 2016, no pet.) (mem. op., not designated for publication); *Bollinger v. State*, 224 S.W.3d 768, 781 (Tex. App.—Eastland 2007, pet. ref'd). We conclude that the trial court did not abuse its discretion by determining that counsel's strategy in this regard fell within an objective standard of reasonableness. *See, e.g.*, *Blackwell v. State*, 193 S.W.3d 1, 22 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *see also Guerra*, 2016 WL 6212999 at *18.

Garcia additionally complains of Det. Morrison's testimony that she did not have concerns that A.B. lied, and the testimonies of both Det. Morrison and Det. White that the allegations contained in the 2009 report were consistent with those in the 2011 report. Trial counsel's affidavit indicates that he did not object to these statements because he did not want to overemphasize the testimony in the minds of the jury. The trial court found that this was a valid trial strategy. Regardless of whether these statements could have been excluded as impermissible comments on

14

A.B.'s credibility, the trial court's findings were within the scope of its discretion. *See, e.g.*, *Cooper*, 788 S.W.2d at 618.

Because the trial court did not abuse its discretion in finding that trial counsel had a valid strategic reason for not objecting to the evidence, we overrule Garcia's first issue.

## II.  Failure to object to improper outcry testimony

In his second issue, Garcia argues that his attorney's performance was deficient because he failed to object to outcry testimony from Gloria. He asserts that Gloria was not a proper outcry witness under article 38.072 of the Code of Criminal Procedure because she was under 18 when A.B. told her about the abuse, and her testimony was therefore inadmissible hearsay.

Testimony relaying an out-of-court statement of another person offered to prove the truth of the matter asserted in the statement is generally inadmissible hearsay. TEX. R. EVID. 801(d), 802. As an exception to the ordinary rule, hearsay statements of child victims of certain sexual offenses are admissible if "made to the first person, 18 years of age or older" to whom the child made a statement about the offense. TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(3). Thus the proper outcry witness under article 38.072 is the first adult to whom the child makes a statement that describes the alleged offense in some discernable manner. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). The statement must give more than "a

general allusion that something in the area of child abuse was going on." *Id.* Outcry statements from multiple witnesses may be admissible under the statute if each witness testifies about different incidents of abuse. *See Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011).

The statute further requires that the party intending to offer such outcry statements meet certain notice requirements, and it requires the trial court to hold a hearing to determine that the statement is reliable. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(b). The provisions of article 38.072 are mandatory and must be satisfied for the outcry statement to be admissible over a hearsay objection. *See Duncan v. State*, 95 S.W.3d 669, 671 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). "The trial court commits error if it overrules the hearsay objection without conducting a hearing." *Moore v. State*, 233 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The record on appeal does not reflect that the trial court held a hearing to determine the reliability of the outcry statements made to Gloria. Det. White and A.B. each testified that Sandra, not Gloria, was the first person A.B. told about the abuse. Sandra was 21 when A.B. confided in her. She testified that A.B. told her Garcia touched her in a sexually inappropriate way, exposed his penis to her, and vaginally penetrated her. She further testified that the abuse occurred when A.B.

16

was between 9 and 13 years old, and mostly occurred in A.B.'s bedroom when her aunt and mother were in class.

Gloria testified that she was 17 or 18 years old when A.B. told her she had been molested by her uncle as a child. Gloria did not testify about any specific or discernable acts of abuse because A.B. had never told her the details. A.B. had not identified Garcia specifically to Gloria as the perpetrator of the abuse, and Gloria testified that A.B. could not remember what age she was when the abuse occurred. Gloria only knew that the abuse occurred when A.B. was "at her aunt's house," but she did not know the identity of the aunt.

Had Garcia's attorney objected to Gloria's hearsay testimony, or challenged the admissibility of multiple outcry witnesses in this case, the court would have been required to conduct an article 38.072 hearing. *See Moore*, 233 S.W.3d at 35. Gloria likely would not have qualified as a proper outcry witness. *See, e.g.*, *Garcia*, 792 S.W.2d at 91; *see also Allen v. State*, No. 01-13-00784-CR, 2015 WL 5076288, at *7 (Tex. App.—Houston [1st Dist.] Aug. 27, 2015, pet. ref'd) (mem. op., not designated for publication); *Everett v. State*, No. 04-03-00709-CR, 2005 WL 236662, at *6 (Tex. App.—San Antonio Feb. 2, 2005, no pet.) (mem. op., not designated for publication). In addition to the fact that Gloria was not the first person A.B. told about the abuse, and the confusion over whether Gloria was over 18 at that time, the statements made to her were no more than general references to

sexual contact and did not contain specific information about a particular incident that could have formed the basis of the charged offenses. The statements made to Sandra were more detailed and included a location, time period, and specific sexual acts committed by Garcia. This would tend to make Sandra a proper outcry witness under article 38.072.

In his affidavit, Garcia's trial counsel explained that he did not object to Gloria's testimony because the outcry was inconsistent with the victim's account of the abuse, it did not identify Garcia as the perpetrator, and there were other potential outcry witnesses who could have testified if Gloria had not. The trial court found that this was a valid trial strategy. *See, e.g.*, *Wylie v. State*, 908 S.W.2d 307, 309 (Tex. App.—San Antonio 1995, pet. ref'd) (failure to object to inadmissible hearsay testimony could have been calculated as part of valid trial strategy to attack credibility of the complainant).

Even to the extent counsel's failure to object to Gloria's testimony could not reasonably be explained as trial strategy and fell below an objective standard of reasonableness, without a showing of prejudice, we cannot conclude that Garcia was prejudiced by his trial counsel's inaction. *See Thompson*, 9 S.W.3d at 813; *see also Wylie*, 908 S.W.2d at 309. If the properly admitted evidence remaining after the inadmissible testimony is disregarded is still sufficient to support a jury finding of guilt, then the appellant has failed to show prejudice. *See Brooks v. State*, 990

18

S.W.2d 278, 287 (Tex. Crim. App. 1999); *see also Lamerand v. State*, 540 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). Sandra's testimony—the admissibility of which is not challenged—was much more detailed than Gloria's testimony. Also, A.B. herself testified in great detail about the abuse. Her testimony alone is sufficient to support the jury's finding of guilt. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (testimony of sexual assault victim alone is sufficient to prove the offense); *Jones v. State*, 817 S.W.2d 854, 856 (Tex. App.—Houston [1st Dist.] 1991, no pet.).

Garcia has failed to show by a preponderance of the evidence that there is a reasonable probability that the result of the trial would have been different had counsel voiced a hearsay objection to Gloria's testimony. *See Strickland*, 466 U.S at 694, 104 S. Ct. at 2068. The trial court therefore did not abuse its discretion when it denied Garcia's writ of habeas corpus relating to the hearsay point. We overrule Garcia's second issue.

## III.   Failure to object to hearsay statements of complainant

On appeal, Garcia contends that A.B. testified about statements her cousin made to her and her cousin's reference to Garcia as a "bastard." Garcia did not raise this issue in his application for a writ of habeas corpus and therefore it was not addressed by the trial court. Even if we assume that Garcia preserved error with respect to this argument, he has inadequately briefed this issue.

The portion of Garcia's brief discussing this point of error is six lines long, includes two citations to the reporter's record, and has no citations to legal authority. *See* TEX. R. APP. P. 38.1(i) (brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities"). The brief does not apply the law to the facts, and it provides no substantive analysis of the issue. Under these circumstances, Garcia's brief is inadequate, and he has therefore waived this issue on appeal. *See id.*; *see also Thomas v. State*, 312 S.W.3d 732, 738 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). We overrule Garcia's third issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).